## STAFFORD vs. POOLER.

Where a purchaser is bound, by the contract, to inspect and accept or reject the property, at the time and place of delivery, the offer to return, if the property does not conform to the contract, must be then and there made.

Where an offer is made, to do an act at a place other than the one at which the law or the contract requires it to be done, and the refusal is in terms which show an intent not to accept performance anywhere, the offer will be held sufficient. But when the offer is such that the party to whom it is made is not bound to accept any part of it, a refusal which does not, in terms, preclude any further attempt at performance, does not dispense with a performance.

Where a party offers to perform some of a series of acts which the law requires to be done in order to discharge a duty or establish a right, and the offer is refused in such terms as to satisfy a court or jury that the party would not accept anything offered, a further offer is excused.

The plaintiff agreed to deliver to the defendant, at C., 200,000 hoops, at $3.50 per M. The hoops were to be well rived ash hoops, and of specified dimensions. Payments were to be made from time to time, as a certain number should be delivered. The plaintiff delivered 203,100 hoops to the defendant, at C., in bundles claimed to contain 100 hoops, each. After some 30,000 of the hoops had been delivered, it was mutually agreed that the hoops should be inspected; but no time or place, or person, when, where and by whom such inspection should be made was agreed upon. The defendant sold the hoops so bought of the plaintiff to a salt company, and shipped those delivered, by canal, to S. At that place, an agent of the salt company inspected some fifty bundles and found them short in number, and defective in quality, so that there were but fifty-eight merchantable hoops in a bundle. The defendant then offered to return said hoops to the plaintiff, at S., provided he would pay $152, the freight charges thereon, and the advances made to the plaintiff. This offer was refused, the plaintiff saying he could not take them back, and the defendant might do as he pleased with them. The defendant's agent examined some three hundred bundles of said hoops, at S., including those examined by the inspector, and found that they did not contain over fifty well rived ash hoops to the bundle, the residue being worthless. No inspection was made at C. In an action to recover the balance of the purchase price of the hoops, remaining unpaid:

*Held,* 1. That the defendant was not entitled to damages for any deficiency in quantity, or defect in quality, of the hoops.

2. That the property was, by the terms of the contract, to be delivered at C., and when delivered there, it was the duty of the defendant to examine it, and promptly to accept or reject it.

3. That the subsequent agreement, that the hoops should be inspected, without designating any time when, place where, or person by whom, such inspection should be made, did not alter the original contract, except by relieving the defendant from inspecting at the very time of delivery.

4. That as the hoops were to be delivered at C., the inspection must be held to have been intended to be made at C.

5. That unless the plaintiff assented to an inspection at S., the acceptance at C., and shipment of the hoops to S. without the knowledge or assent of the plaintiff, was such a retention of the property as amounted to an admission that it was accepted in satisfaction of the contract.

6. That if there was not an acceptance of the hoops, so as to preclude the defendant from alleging and proving non-performance on the part of the plaintiff, there was no offer to return, within the principle of *Read* v. *Randall* (29 *N. Y.*, 358.)

7. That the property being deliverable and to be accepted at C., the offer to return it at S., on payment of charges, was not such an offer as the plaintiff was bound to accept. And that the refusal to accept was not so broad and unequivocal as to cure any defect in the offer.

8. That the plaintiff was bound by a custom, existing at C., of inspecting a part of the whole quantity and to arrive at the quality and quantity of the whole by the average thus ascertained. But that the inspection of a part of the hoops, at S., was not conclusive evidence of the condition of the whole. And that the referee was right in finding that those only were to be taken to be defective that were actually examined.

9. That the inspection at S. did not bind the plaintiff; and besides, it came too late, the property then having passed from the plaintiff to the defendant.

10. That evidence of the making of a second agreement between the parties for the delivery by the plaintiff of more hoops, after the defendant knew of the defects in those previously purchased, was admissible to rebut the testimony of the witnesses, as to the bad quality of the former lot.

It was found, by the referee, that only three hundred bundles of the whole quantity of hoops were actually inspected; and these being found to be but one-half, or 15,000 of them conforming to the contract, the referee deducted, by way of damages to the defendant, $52.50, being the value of 15,000 hoops at $3.50 per thousand. *Held*, that the defendant was allowed, by the referee, for all the damages proved, on the facts found by him.

THIS was an action brought to recover the balance unpaid of the price of 203,100 hoops, which the plaintiff agreed to manufacture and deliver to the defendant at Carthage, in the county of Jefferson, at $3.50 per thousand. The hoops were to be well rived ash hoops, and of specified dimensions. Payments were to be made by instalments ; that is, from time to time as a certain number should be delivered. The contract was dated Dec. 8, 1862, and was for 200,000 hoops.

During the months of January, February and March,

Stafford *v.* Pooler.

1863, the plaintiff delivered the above mentioned quantity of hoops to the defendant, at Carthage, at a place indicated by the latter, in bundles containing, as he claimed, 100 hoops each.

The defendant set up in his answer, by way of defence, that after the making of the contract and on the 8th Dec., 1862, it was agreed between the parties that said hoops should be inspected at Syracuse, and that the plaintiff would be bound by such inspection. This agreement was denied by the plaintiff, and the referee found, as matter of fact, that no such agreement was made ; except that about the 2d of February, 1863, and after some 30,000 of the hoops had been delivered at Carthage, it was mutually talked and understood that the hoops should be inspected in reference to their quality, but no time or place or person was agreed upon when, where and by whom such inspection should be made.

The defendant sold the hoops bought of the plaintiff to the salt company, at Syracuse, and on the 1st of May, 1863, shipped said hoops, together with 127,000 purchased of other persons, by canal, to Syracuse. At that place an agent of, and a stockholder in, said salt company, inspected some fifty bundles of said hoops, and found them short in number and defective in quality ; so that there were but fifty-eight merchantable hoops in a bundle. The result of this inspection was communicated to the defendant, who afterwards informed the plaintiff thereof, and offered to return the said hoops to the plaintiff, at Syracuse, provided he would pay to the defendant $152, the expense of transporting said hoops to that place and the advances made by the defendant, thereon, to the plaintiff. This offer was refused, the plaintiff saying he could not take them back, and the defendant might do with them as he pleased. He insisted the hoops were good, and demanded the balance of his pay. The defendant's agent

examined some three hundred bundles of said hoops, at Syracuse, including the fifty examined by the inspector, and found that the hoops so examined did not contain to exceed fifty well rived ash hoops to the bundle, and the residue of each bundle were worthless.

The referee found a general custom at Carthage, as well as at Syracuse, to inspect occasionally a bundle and average the quantity by the result of such inspection.

The referee reported in favor of the plaintiff for the contract price of the hoops, less the amount paid to him by the defendant and $52.50, being the deficiency in quantity and quality of the 15,000 hoops inspected.

It was conceded, on the argument, that there was an error of $100 in the amount found due, by the referee, which was to be deducted.

There were several other questions raised, on the trial, which are referred to in the opinion of the court.

The defendant appealed from the judgment entered on the report of the referee.

*Jas. F. Starbuck,* for the appellant. I. The offer to return the hoops, as found by the referee, takes the case out of the embarrassment by which the plaintiff was defeated in *Reed* v. *Randall,* (29 *N. Y.,* 358.) There, the only embarrassment was the want of an offer to return.

II. The offer to return does not need to be pleaded. We allege breach of our contract and claim damages for such breach. The offer to return is merely *evidence* in support of our claim, and hence need not be pleaded. But if we are wrong in this, no such question can be made here. The proof is given, and the fact is found.

*Levi Brown,* for the respondent. I. The plaintiff was entitled to payment for full contract price, less payments, and the $27.47 counter claim. 1st. The property was delivered, and after ample time and opportunity to inspect and offer to return, it *was accepted* by defen-

dant without any notice or offer to plaintiff, and was removed more than a hundred miles from the place of delivery, and sold and delivered to a third party. (*Reed* v. *Randall*, 29 *N. Y.*, 358, 362, 363, 364. *Sprague* v. *Blake*, 20 *Wend.*, 61.) 2d. The arrangement (if any was made subsequent to contract and partial delivery) as to inspection, must be held to have contemplated an inspection, if at all, before defendant received, disposed of and removed the property; after which, an inspection would be too late, not being in pursuance of the arrangement, and must be held to have been previously made or waived by defendant. His subsequent inspection at Syracuse, and pretended offer to return, were therefore of no avail. (*See cases above cited, and Milnor* v. *Tucker*, 1 *Car. & Payne*, 15; *Fisher* v. *Samuda*, 1 *Camp.*, 190.) 3d. There is no warranty. A warranty cannot be predicated upon the contract alleged in the complaint. (29 *N. Y.*, 361, 362.) 4th. Defendant has never offered to return the property. If it had not been too late to make such offer, he should have returned or offered to return the property to plaintiff, and put him in the position he found him. The offer to return the property at Syracuse was no offer, within the rule. (30 *Barb.*, 20, 23. 31 *Barb.*, 171, 183, *and cases cited.*) Again, it was bad for the reason that it was conditional. (19 *N. Y.*, 262, 267.)

II. In any event, the defendant could not be entitled to more damages than he proved. He inspected 300 bundles. There is no evidence that the other 1,700 bundles were defective, or if they were, to what extent, and as to a large portion of the hoops there is *proof that they were good.*

*By the Court*, MULLIN, J. It was held by the Court of Appeals, in *Reed* v. *Randall* (29 *N. Y.*, 358,) that in cases of executory contracts for the sale and delivery of personal property, the purchaser must return, or offer to

return the property if, on inspection, it does not correspond with the contract, and that the retention of the property by the purchaser, after an opportunity for inspection, is an admission on his part that the contract has been performed.

Applying these principles to this case, it is quite clear that the defendant was not entitled to damages for any deficiency in quantity, or defect in quality, of the hoops.

The property was, by the terms of the contract, to be delivered at Carthage, and when delivered there, it was the duty of the defendant to examine it, and promptly to accept or reject it. (*Chitty on Contracts*, 460, &c.)

The subsequent agreement, that the hoops should be inspected, with reference to their quality, without designating any time when, place where, or person by whom, such inspection should be made, does not alter the original contract, except by relieving the defendant from inspecting at the very time of delivery. The hoops were still to be delivered at Carthage. The inspection must be held to have been intended to be made at Carthage ; and whether the inspection was to be made by a licensed inspector, or by a person acquainted with such property, is not very material, as no inspection is pretended at Carthage — at any time.

Unless the plaintiff assented to an inspection at Syracuse, (which is not found by the referee,) the acceptance at Carthage and shipment of the hoops to Syracuse without the knowledge or assent of the plaintiff, is such a retention of the property as amounts to an admission that it was accepted in satisfaction of the contract. (*Chitty on Cont.*, 461–2.)

If it should be held that there was not an acceptance of the hoops, so as to preclude the defendant from alleging and proving non-performance on the part of the plaintiff, I am of the opinion that there was no offer to return, within the principle of *Reed* v. *Randall*, (*supra.*)

When the purchaser is bound by the contract, to in-

Stafford *v.* Pooler.

spect and accept or reject the property at the time and place of delivery, the offer to return, if the property does not conform to the contract, must be then and there made. It would be most unjust to the vendor to permit the purchaser to ship the property to some distant place and to require him there to receive it back and repay to the vendee the expense of its transportation. ( *Ward* v. *Gaunt,* 6 *Duer,* 257.) So, too, when an offer is made, to do an act at a place other than the one at which the law or the contract requires it to be done, and the refusal is in terms which show an intent not to accept performance, anywhere, the offer will be held sufficient. But when the offer is such that the party to whom it is made is not bound to accept any part of it, a refusal which does not, in terms, preclude any further attempt at performance, does not dispense with a performance.

If, in this case, it had been found that there was an agreement that the property should be inspected at Syracuse, that would then be the place of performance ; and if the vendor had delivered property not such as was called for by the contract, he should bear the expense of the transportation, as his own misconduct had led to the expenditure.

When, however, the property was deliverable and to be accepted or rejected at Carthage, an offer to return at Syracuse, on payment of charges, is not such an offer as the plaintiff was bound to accept.

The referee is of the opinion that the refusal to accept was so broad and unequivocal as to cure any defect in the offer. In this I cannot concur with him. When the offer was made, the plaintiff was bound to accept or reject it. He did reject it, promptly and emphatically, and he was justified in doing so. The defendant had not yet made the offer he was bound to make in order to enable him to recover damages. Nor did he intimate that he would deliver at any other place, or upon any other terms than such as he then offered. When a

party offers to perform some of a series of acts which the law requires to be done in order to discharge a duty or establish a right, and the offer is refused in such terms as to satisfy a court or jury that the party would not accept anything offered, a further offer is excused.

If it should be held that the defendant had done enough to entitle him to be allowed for the inferior . quality of the hoops and deficiency in number, I am of the opinion that he was allowed, by the referee, for all the damages proved, on the facts found by him. It is found that only 300 bundles of the whole quantity were actually inspected ; and as these were found to be but one half, or 15,000 of them answering the description called for by the contract, the referee deducted, by way of damage to the defendant, $52.50, being the value of 15,000 hoops at $3.50 per thousand. The defendant insists that it was the duty of the referee to have found, upon this evidence, that the plaintiff delivered but one half of the whole nominal quantity actually delivered. In other words, that as it was the custom to count but a few of the whole number of bundles of hoops, and from them to determine the quality of the whole quantity, and as out of 30,000 examined, only half were such as answered the contract, it followed, and the referee was bound to find, that but one half of the whole quantity delivered by the plaintiff conformed to the contract.

The plaintiff was bound by the custom at Carthage, of inspecting a part of the whole quantity, and to arrive at the quality and quantity of the whole by the average thus ascertained. Had the inspection been made at Carthage, I have no doubt the average of the bundles examined would have determined the character of the whole. But no such inspection was then made ; and an inspection of a part, made at Syracuse, would not be conclusive evidence of the quality of the whole, but would be persuasive evidence of the condition of the

Stafford v. Pooler.

whole; and from the condition of the part inspected, the referee might infer the condition of all. The inspection at Carthage not being proved, the evidence of the condition of a part was not conclusive as to the condition of the whole. And upon all the facts before him, I think he was right in finding that those, only, were to be taken to be defective that were actually examined.

But the trouble is, the inspection at Syracuse did not bind the plaintiff; and besides, it came too late. When it was made, the property had passed from the plaintiff to the defendant.

Again; it is by no means certain that either Nutting, the inspector at Syracuse, or McCollom, confined their inspection to the hoops delivered by the plaintiff. There was room for mistake in attempting to distinguish those delivered by the plaintiff from the 127,000 sold to the defendant by other parties. At all events, the fact that there was this additional quantity on the boat, detracts very much from the weight which might otherwise be given to the inspection.

The finding of the custom of inspecting a part of the hoops delivered and averaging the residue, disposes of the point made by the appellant, that proof of such a custom was improperly rejected. While the evidence offered was rejected, the fact proposed to be proved is found by the referee.

The plaintiff offered in evidence a contract between the parties for the sale of all the hoops manufactured by the plaintiff during the season of 1863, at $3.75. This agreement was dated April 2d, 1863. The evidence was objected to by the defendant's counsel, but the objection was overruled, and the defendant's counsel excepted. The plaintiff's counsel did not disclose the object he had in view in giving this evidence; and we are therefore left to conjecture as to the reasons which induced the referee to receive it. The only pur-

pose for which it would seem to me it could be claimed to be competent would be to rebut the evidence of McCollom and others as to the bad quality of the hoops; the argument being that if the hoops delivered on the former contract were defective, it would not be probable that a new contract for the same article would have been made, with full knowledge of the bad condition of the former lot. I am unable to perceive why this was not competent evidence. If the defendant himself had been on the stand, and had sworn that the hoops delivered on the former contract were defective, it would have been competent to inquire of him whether he did not make a new contract, for more of the same article, after he knew of the defects in those previously purchased. If he had answered in the affirmative, the fact would have gone very far towards destroying his evidence. The defendant was not sworn, but he set up, as a defence, and examined witnesses to prove, that the hoops delivered on the former contract were defective, notwithstanding he had made a new contract for the same article, with the plaintiff, after he knew of the very bad condition of the hoops previously delivered. It was evidence tending to rebut the defence.

But, if it was not competent, it was wholly immaterial, if the defendant could not, on the case made by him, recover damages for the defective condition of the hoops.

The defendant's counsel excepts to the finding of the referee that the price of the hoops, after deducting $52.50 for damages, was $758.30. The ground of this exception, I presume, is, that by mistake in calculation, the referee has made the price $100 too much; and this exception is therefore well taken. If it was intended by the counsel, by this exception, to assail the finding as improper in any other respect, I think it is not well taken, for the reasons already stated.

There is another exception to the amount found due

Stafford *v.* Pooler.

to the plaintiff; and as this, also, is $100 too much, it is well taken.

The counsel and the referee have called the deduction of $52.50, made by the referee, damages allowed for the defective quality of the hoops. But I do not perceive how it can be called damages, or an allowance to the defendant for any purpose. The plaintiff was bound to deliver 200,000 well rived ash hoops, of given dimensions. Upon inspection, after delivery of 30,000 of them, only 15,000 were found to answer the contract. The plaintiff was therefore entitled to recover for 15,000, instead of 30,000. Limiting the recovery to 15,000 was merely holding the plaintiff to the performance of his contract. The whole quantity called for by the contract not being delivered, the defendant was entitled to *recoup* such damages as he sustained by reason of such non-delivery; and these damages would be the difference between the contract price and the market price at the time of delivery. For this (the only damage actually sustained, by the defendant,) no allowance whatever was made. But no question was made, in regard to it, before the referee, and as a consequence, no question can be raised, upon it, on this appeal.

I am of opinion that the judgment of the referee should be reversed; unless the plaintiff shall stipulate to deduct from the same $100, as of the date of its entry. If such stipulation is given, then the judgment must be affirmed, without costs of appeal to either party.

Judgment accordingly.

[ONONDAGA GENERAL TERM, January 1, 1867. *Bacon, Foster* and *Mullin,* Justices.]